RTP:MEC/FTB/VTN
F. #2015R00524

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                       Docket No. 20–CR-272 (PKC)

DONAL O'SULLIVAN,
HELEN O'SULLIVAN and
PADRAIG NAUGHTON,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL THE GOVERNMENT TO COMPLY WITH ITS DISCOVERY OBLIGATIONS AND FOR RELATED RELIEF

SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Martin E. Coffey
F. Turner Buford
    Assistant U.S. Attorneys
Virginia T. Nguyen
    Special Assistant U.S. Attorney
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum in opposition to the defendants' November 20, 2020 motion to compel the government to comply with its discovery obligations and for related relief.

The government's Rule 16 discovery is substantially complete, and has been since the Court's November 6, 2020 deadline for such discovery. Moreover, throughout the Rule 16 discovery process, the government has acted in good faith, working diligently to produce discovery that in fact exceeds its Rule 16 obligation. In addition – as the government has represented to the defendants – it understands, has complied with, and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The government similarly understands its obligations with respect to production of Jencks Act ("3500") material, witness lists, and exhibit lists.

For the reasons set forth below, the government respectfully requests that the Court deny the defendants' motion, enter the proposed order pursuant to Federal Rule of Criminal Procedure 5(f) attached to this motion as Exhibit A, and read the statement attached to this motion as Exhibit B at the next court date on which both the government and defense counsel are present.

I.      Relevant Background

    A.      The Indictment and Charges[1]

On July 29, 2020, a grand jury returned an eleven-count indictment ("Ind.") against Donal O'Sullivan, Helen O'Sullivan and Padraig Naughton. The indictment describes a scheme perpetrated by the defendants to avoid making contributions that Navillus Tile, Inc. d/b/a Navillus Contracting ("Navillus") owed to benefits funds maintained by certain labor unions. As explained in the indictment, Navillus was a prominent construction firm operating in the New York City area that was controlled during the relevant time by Donal O'Sullivan, who served as Navillus's President. (Ind. ¶1.) Navillus – through its participation in an employer association – had committed to employing only union members to perform various types of specified work, as detailed in collective bargaining agreements with multiple unions that were binding on Navillus. (Id. at ¶¶ 2-4.) Navillus had further committed to making financial contributions to various benefits funds administered by the unions; the amount of these contributions was determined on a union-by-union basis based on the number of hours worked for Navillus by the respective unions' members during defined time periods and the wages received by the union members for that work. (Id. at ¶¶ 4-5.)

The indictment alleges that the defendants conspired to evade Navillus's obligations to make contributions to the union benefit funds by entering into a fraudulent arrangement with a consulting firm (the "Consulting Firm"). The defendants structured the

---

[1] This background is set forth in the government's November 20, 2020 memorandum of law in opposition to defendants' motion for a bill of particulars, and reproduced herein for the Court's convenience. (See Dkt. 78.)

arrangement to disguise Navillus employees as employees of the Consulting Firm, which – unlike Navillus – was not obligated to employ union workers, nor make contributions to union benefits funds. The fraudulent arrangement thereby freed Navillus to avoid making corresponding contributions to the union benefit funds that it owed on behalf of its union workers. The scheme also permitted Navillus to employ non-union workers, for whom Navillus similarly failed to make contributions to union benefits funds, even though the collective bargaining agreements required such contributions because the non-union workers were performing work that Navillus had agreed would only be done by union members.

The indictment alleges that the scheme ran from approximately 2011 to 2017 and set forth the mechanics of how the scheme operated. As described in the indictment, the defendants arranged for payroll information for certain Navillus employees to be sent to the Consulting Firm on a weekly basis. (Ind. ¶ 13.) The payroll information generally included the employees' names, social security numbers, IRS Form W-4s and the number of hours worked for each employee, as well as the employees' respective wage rates. (Id.) The defendants also arranged for funds to be transmitted from Navillus to the Consulting Firm on a weekly basis. (Id.) The Consulting Firm used the funds to generate individual paychecks – drawn on accounts in the name of the Consulting Firm – for the specified employees through Automatic Data Processing Inc. ("ADP"). (Ind. ¶ 14.) The paychecks were delivered to the Consulting Firm and eventually distributed to the relevant workers, thus making it appear as though the workers were employed by the Consulting Firm and not by Navillus. (Ind. ¶¶ 12, 14-15.)

The funds transferred by Navillus to the Consulting Firm totaled more than $7 million during the time of the conspiracy. (Ind. ¶ 13.) The indictment identifies John Doe,

the owner of the Consulting Firm, and Jane Doe, a secretary at the Consulting Firm, as unindicted co-conspirators, who facilitated the operation of the scheme. (Ind. ¶¶ 8-9, 14.) The indictment alleges that the weekly funds transferred from Navillus to the Consulting Firm, in addition to covering the paychecks issued to Navillus employees (disguised as employees of the Consulting Firm), also covered Jane Doe's salary, ADP's processing fee and a regular payment to John Doe for assisting in operating the scheme. (Ind. ¶ 14.) To document these fraudulent payments from Navillus to the Consulting Firm, the Consulting Firm prepared – at the defendants' direction – false invoices billing Navillus for purported "masonry" and "consulting" work that in fact was not provided. (Ind. ¶ 13.) The indictment alleges that through the scheme the defendants caused Navillus to avoid more than $1 million in contributions to union benefits funds that it otherwise was obligated to make. (Id. ¶ 16.)

The indictment charges the defendants with mail and wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count One); wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Four); mail fraud, in violation of 18 U.S.C. § 1341 (Counts Five through Seven); conspiracy to embezzle from Employee Benefit Funds, in violation of 18 U.S.C. §§ 371 and 664 (Count Eight); embezzlement from Employee Benefit Funds, in violation of 18 U.S.C. § 664 (Count Nine); conspiracy to file false remittance reports with union benefits funds, in violation of 18 U.S.C. §§ 371 and 1027 (Count Ten); and the submission of false remittance reports to union benefits funds, in violation of 18 U.S.C. § 1027 (Count Eleven). The Counts contain additional details regarding the operation of the scheme, including specific dates on which the Consulting Firm transmitted payroll details to ADP (Counts Two through Four) and specific mailings of paychecks to the Consulting Firm from ADP (Counts Five through Seven). The indictment also lists as overt acts in

furtherance of the conspiracy to embezzle from Employee Benefit Funds (Count Eight) specific checks, identified by date, amount and check number, issued by Navillus to the Consulting Firm in furtherance of the scheme.

    B.    <u>Rule 16 Discovery</u>

To date, the government has produced more than 325,000 files to the defendants, totaling approximately 165 gigabytes. The produced discovery includes, among other things, bank records, payroll records, victim union records, consensually-recorded phone calls, emails among the alleged co-conspirators, documents from publicly-filed civil litigation involving the defendants' employer, records obtained from the execution of two email search warrants, and information received from a variety of third-party custodians.

The produced discovery exceeds the government's Rule 16 discovery obligations. For example, although not required by Rule 16, in order to facilitate the defendants' review of the produced discovery, the government directed the defendants to specific communications it considers relevant, produced subsets of relevant documents, produced bank "spreads" prepared by law enforcement personnel (detailed breakdowns of various, relevant bank accounts in easily sortable Excel files), produced a "Hot Docs" binder compiled by the investigating agents, and produced on a union-by-union basis the documents underlying the government's loss calculation.

The government's Rule 16 discovery is substantially complete, and has been since the court-ordered November 6, 2020 deadline for such discovery. Subsequent to that date, the government identified and promptly produced, on November 12, two additional sets of documents for production. The first contained two files that largely were cumulative of information previously produced, but which the government produced in an abundance of

5

caution to ensure that the defendants received all of the information contained in the files. The second contained third-party documents that, subsequent to November 6, the government identified and determined had not been included in prior discovery productions. In addition, in response to questions raised by the defendants, the government produced new versions of documents it had produced previously.  As far as the government is aware, production of these documents resolved the questions raised by the defendants.

In a production being made today, the government is providing to the defendants approximately twenty-five screen shots of text message exchanges between a Navillus employee and Jane Doe.  The government identified these materials during preparation for the evidentiary hearing scheduled for December 17, 2020.  Aside from these screen shots, the government presently is not aware of any Rule 16 material in its possession that has yet to be produced.  As discussed at the October 23, 2020 status conference, as the government reviews its files in preparation for trial, it promptly will turn over any materials it identifies that have not previously been produced.  (See Conf. Tr. 35:4-20, Oct. 23, 2020.)

II.  Argument

    A.  The Government's Rule 16 Discovery Is Substantially Complete and Has Been Undertaken in Good Faith

The defendants assert that the government has "flouted" its discovery obligations and failed to produce Rule 16 discovery in its possession, and accordingly seek an order: (i) directing the government to produce all remaining Rule 16 discovery (including with respect to John Doe's 2017 hard drive, discussed below), accompanied by a written certification that all such discovery has been produced, within seven days; (ii) precluding the government from introducing at trial any Rule 16 material that was in the government's

6

possession but not produced by November 6, 2020; and (iii) holding the government in contempt for violating the Court's discovery order. (Mem. of Law at 1-2, 7.) The defendants' repeated assertion that the government knowingly violated its court-ordered discovery obligation is baseless and mischaracterizes the record. Moreover, the defendants' continued and repeated insistence that they somehow have been prejudiced by the purported discovery violations is without merit.

Accordingly, for the reasons set forth below, the Court should deny the defendants' motion with respect to these requests.

As a threshold matter, contrary to the defendants' characterization of the case history, the deadline for Rule 16 discovery was November 6, 2020. To the extent any earlier deadlines were set, they either required that the government produce "as much of the remaining discovery as possible" (Conf. Tr. 14:18-20, Sept. 1, 2020.) – a deadline by which the government in fact produced as much discovery as it was able, which was voluminous – or were adjourned by the Court.

With respect to the November 6 deadline, the defendants argue that the government violated the deadline in three respects. (Mem. of Law at 5-6.) In fact, as detailed below, only one of the defendants' complaints relates to the government's producing Rule 16 materials for the first time after the deadline, which the government has done with respect to a small number of materials identified after the deadline, and which comprise a tiny fraction of the government's overall production.

First, the defendants state that certain of the discovery the government purported to produce on November 6 in fact was not included in the government's production. (Mem. of Law at 5.) This was an inadvertent technical issue. Following the

7

government's November 6 production, the defendants notified the government that – unbeknownst to the government – certain of the materials referenced in the government's discovery letter were not available in the government's production.  In an effort to make the discovery available to the defendants as quickly as possible, the government engaged an outside discovery vendor to resolve the technical issue and prepare the discovery materials for the defendants.  On Monday, November 16 – four days after the defendants informed the government of the technical issue – the government notified the defendants that the discovery would be available to them directly through the outside vendor the following day.  The government subsequently needed to work through with the outside vendor some technical issues relating to the production, but the vendor has confirmed to the government that the production was provided to defense counsel on November 24.

Notably, although the defendants now complain about the process of utilizing the outside vendor, including with respect to the government arranging for the defendants to obtain the discovery directly from the vendor, it is the exact process the parties utilized earlier in the discovery process to resolve a technical issue with a different set of discovery materials.  The defendants did not object to the process at that point, nor did they do so with respect to the November 24 production until the instant motion.

Second, the defendants cite that the government produced additional discovery on November 12.  (Mem. of Law at 5.)  The government's November 12 production largely sought to cure deficiencies with prior productions that the defendants identified during the parties' meet and confers, which the government worked to address.  The November 12 production also included two sets of additional materials.  As described above, the first contained two documents (totaling approximately three hundred pages) that largely were

8

cumulative of information previously produced, but which the government produced in an abundance of caution to ensure that the defendants received all of the information contained in the documents. The second contained approximately thirty-eight documents (totaling approximately two thousand and three hundred pages) from third parties that, subsequent to November 6, the government identified and determined had not been included in prior discovery productions. In addition, as noted above, the government today is providing the defendants with approximately twenty-five screen shots of text message exchanges.

Third, the defendants complain that the government has not yet produced the non-privileged materials on John Doe's 2017 hard drive. (Mem. of Law at 5-6.) On September 1, 2020, the government produced a substantial quantity of the materials from this hard drive that the government had identified as relevant to the charges in the indictment. The government thus satisfied its Rule 16 obligation with respect to this hard drive long before the November 6 discovery deadline. Nevertheless, the government did agree to provide the defendants with the remaining non-privileged contents of the hard drive. Although the government has endeavored to provide the defendants with these materials as quickly as possible,[2] production of these materials should not bear on the government's compliance with the Court's Rule 16 deadline.

---

[2] For the reasons set forth in the government's December 7, 2020 submission, the government's understanding has been, and remains, that John Doe did not waive attorney-client privilege when he consented in 2017 for the government to search his hard drive. (See Dkt. 90.) Consistent with that understanding, the government has undertaken to segregate any privileged materials from the drive, such that those materials will not be reviewed by the case team or produced to the defendants, and has sent the hard drive to a Department of Justice facility in South Carolina for processing. The process is underway, but, given both the technical issues and the need to use taint personnel, necessarily is time consuming.

9

As this history reflects, the government has not flouted its discovery obligations. Rather, the government – faced with significant resource and logistical constraints due to the ongoing COVID-19 pandemic, which affect the speed and ease with which the government can process data, irrespective of how long it has possessed the data – has worked diligently and expeditiously to produce Rule 16 discovery to the defendants. Almost all of the issues the defendants have identified involve technical issues and were remedied as quickly as possible.

Moreover, the defendants' claims to have been prejudiced by the government's Rule 16 discovery – including their claim that the government's conduct is hindering the defendants' trial preparation and delaying the progress of the case, thereby prejudicing the defendants and their business interests – is unpersuasive given the current case status. (See Mem. of Law at 6-7.) No trial date has been scheduled, and any delay resulting from the issues the defendants identified has not materially delayed the progress of the case. Indeed, at the defendants' request, briefing on the government's motion in limine to admit certain evidence at trial will extend into January 2021 (see Dkt. 88), and the Curcio conflict-of-interest issue raised by the Court during the September 1, 2020 status conference (see Conf. Tr. 4:21-9:17, Sept. 1, 2020), more than three months ago, must still be addressed. There is no indication that the case is behind schedule, and the defendants have not needed to request an adjournment of any deadline to address newly produced

---

In addition, as detailed in the government's December 7 submission, it is clear from the record that, contrary to the defendants' suggestion (Mem. of Law at 3), the government's account regarding its efforts to process John Doe's hard drive has not changed; rather, the defendants have provided an incomplete portrayal of the government's representations. (See Dkt. 90.)

discovery. And, in fact, in their motion for a bill of particulars, despite their initial demand that the government respond to approximately twenty-seven individual requests, the defendants made only a narrow request for the names of unindicted co-conspirators, suggesting that, largely due to the government's disclosures, including those made during several meet and confers, the defendants have been able to digest the Rule 16 discovery provided to date and understand the charges against them. (See Dkt. 72.)

The government respectfully submits that in light of its good-faith compliance with its discovery obligations, it is unnecessary for the Court to order the government to produce any remaining Rule 16 discovery within seven days or to provide a written certification that it has complied with its Rule 16 obligation. Moreover, the government submits that the Court should not order production of the non-privileged contents of John Doe's 2017 hard drive, given that the government already has satisfied its Rule 16 obligation with respect to that drive – though, again, the government is working to provide the non-privileged contents of the drive to the defendants as quickly as possible. Further, to the extent the government has acted in good faith throughout the Rule 16 discovery process and diligently attempted to comply with the Court's discovery deadlines, entry of a contempt finding against the government is not warranted. Indeed, even the defendants acknowledge that contempt is appropriate only where the alleged contemnor was not "reasonably diligent in attempting to comply" with the court's order. (Mem. of Law at 8 (citing United States v. Local 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO, 44 F.3d 1091, 1096 (2d Cir. 1995).) That is not the case here.

Finally, as noted above, if the government identifies or comes into possession of any additional Rule 16 material, it promptly will produce that material to the defense.

Rather than entering an order precluding the government from introducing at trial any such discovery produced after November 6, the Court should evaluate such discovery on a case-by-case basis, and determine what, if any, remedy is appropriate under the circumstances. See United States v. Lee, 834 F.3d 145, 158 (2d Cir. 2016) (district court has "broad discretion in fashioning a remedy" for a Rule 16 violation). With respect to the small volume of discovery produced after the November 6, 2020 deadline, the government submits that such evidence should not be precluded from trial. The defendants have not made any showing of prejudice resulting from the timing of the disclosures, nor could they under the circumstances. See United States v. Cantoni, No. 18-CR-562 (ENV), 2019 WL 1264899, at *1 (E.D.N.Y. Mar. 19, 2019) ("To exclude evidence on the grounds of a discovery violation, a criminal defendant must show prejudice resulting from the government's untimely disclosure of evidence, rather than the prejudice attributable to the evidence itself. The showing must be heightened where, as here, the record indicates that the government's purported discovery violation was negligent rather than intentional.") (internal quotations and citations omitted). Indeed, the Second Circuit has held that a district court did not abuse its discretion in permitting introduction of evidence that was disclosed during trial, notwithstanding the putative Rule 16 violation, because there was no substantial prejudice to the defense resulting from the late disclosure. See Lee, 834 F.3d at 161.

Accordingly, the defendants' Rule 16 requests should be denied in their entirety.

> B.  The Government Understands, Has Complied With, and Will Continue to Comply With Its Obligations Under Brady and Giglio

The defendants request certain categories of Brady and Giglio material and seek an order compelling the government to produce the requested material or information in its possession, custody, or control, or confirm that it does not possess any such information. (Mem. of Law at 12-14.) The defendants seek production of any Brady material within seven days and production of any Giglio material no later than 60 days prior to trial. (Id. at 12-13, 16.) The defendants also seek entry of an order pursuant to the recently amended Federal Rule of Criminal Procedure 5(f). (Id. at 14.) For the reasons set forth below, the Court should deny the defendants' Brady and Giglio requests and enter the proposed 5(f) order attached to this motion as Exhibit A.

Under Brady and its progeny, the government has "a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). Favorable evidence includes both exculpatory materials and information that might be used to impeach a key government witness. Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)). "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." Id. at 146; see also United States v. Barret, 824 F. Supp. 2d 419, 455 (E.D.N.Y. 2011) ("It is well-settled that the government need not immediately disclose Brady or Giglio material simply upon request by the defendant.") (citing Coppa, 267 F.3d at 146). Rather, the government satisfies its burden under Brady and Giglio if it discloses such information in time for its "effective use" at trial. Coppa, 267 F.3d at 144-46; see also

13

United States v. Singletary, 685 F. App'x 33, 34 (2d Cir. 2017) (summary order).  Indeed, Giglio material need not even be disclosed prior to trial.  See United States v. Morante, 947 F. Supp. 2d 309, 314 (E.D.N.Y. 2013) (recognizing that "the law does not require or encourage disclosure of either Giglio or § 3500 material before trial"); United States v. Yu, No. 97-CR-102 (SJ), 1998 WL 57079, at *5 (E.D.N.Y. Feb. 5, 1998) ("Brady material of an impeachment nature, commonly referred to as Giglio material, is not required to be produced before trial."); United States v. Hotte, No. 97-CR-669 (SJ), 1997 WL 694718, at *2 (E.D.N.Y. Nov. 6, 1997) ("Evidence which is not exculpatory, but is relevant for the purposes of impeachment, must be produced to the defense, but need not be turned over in advance of trial.  The Government may wait until a witness has testified before disclosure of such material is mandated.") (internal citations omitted).  The district court has discretion to order Brady/Giglio disclosures at any time as a matter of "sound case management."  United States v. Taylor, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014), aff'd, No. 16-3274-CR, 2020 WL 629955 (2d Cir. Feb. 11, 2020).

       The government understands, has complied with, and will continue to comply with its obligations under Brady and its progeny.  The government presently is not aware of any Brady material currently in its possession, but will produce such material in a timely manner should any be discovered.  In light of the recent adoption of the Due Process Protections Act, the government agrees that entry of an order pursuant to amended Federal Rule of Criminal Procedure 5(f) is appropriate, but respectfully requests that the Court enter the proposed order attached as Exhibit A to this motion rather than the proposed order submitted by the defendants.  The proposed order attached as Exhibit A is the model order in this District, which the government understands reflects input from the judges in this District

14

and the Federal Defenders of New York, as well as from the U.S. Attorney's Office. Courts routinely are entering this model order to satisfy the requirements of amended Rule 5(f). See, e.g., United States v. Ng, No. 18-CR-538 (MKB) (Dkt. 56) (Dec. 10, 2020); United States v. Jackson, No. 20-CR-533 (ARR), Dkt. 10 (Dec. 7, 2020); United States v. Frazier, No. 20-CR-201 (EK), Dkt. 37 (Dec. 7, 2020); United States v. Kleydman, No. 18-CR-310 (NGG), Dkt. 53 (Nov. 20, 2020); United States v. Corbett, No. 20-CR-213 (KAM), Dkt. 104 (Nov. 13, 2020). There is no basis for deviating from the model order in this case and entering the broader order proposed by the defendants. The defendants' proposed order is unnecessary given both the language in the model order regarding the scope of the government's obligation and the government's representation regarding its Brady obligations, and not warranted to the extent it imposes additional obligations on the government beyond those imposed under Brady and its progeny. In addition to entering the proposed order at Exhibit A, the government requests that, consistent with amended Rule 5(f), at the next court date on which both the government and defense counsel are present, the Court read the statement attached to this motion as Exhibit B and orally confirm that the government understands and will fulfill its Brady obligation.

The government respectfully submits that no further order regarding Brady or Giglio disclosures is warranted at this time. As stated above, the government presently is not aware of Brady material currently in its possession. See United States v. Russo, 483 F. Supp. 2d 301, 308 (S.D.N.Y. 2007) ("[T]he government has represented that it is not aware of any Brady material in this case, but recognizes its continuing obligation to disclose all such material. As the government has, in good-faith, asserted that it has met, and will continue to meet its obligations, there is no reason to compel disclosure of Brady material at this time.").

15

With respect to Giglio material, although the government expects to disclose such material in advance of trial, given that trial is not yet scheduled and the government is continuing to review its files and prepare its case, the government requests that the Court defer setting a disclosure deadline until closer to trial.

    C.    <u>The Court Should Defer Setting Deadlines for 3500 Material, Witness Lists, and Exhibit Lists Until Closer to Trial</u>

The defendants request that the Court direct the government to disclose 3500 material, witness lists, and exhibit lists no later than 60 days prior to trial. (Mem. of Law at 16.) For the reasons set forth below, the Court should defer setting deadlines for these disclosures until closer to trial.

With respect to 3500 material, the government has no general duty to disclose the statements of its witnesses in advance of trial. The Jencks Act, Title 18, United States Code, Section 3500 provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). That is, by statute, the government is not required to produce this material until a witness has testified on direct examination. Likewise, Federal Rule of Criminal Procedure 16 expressly "does not authorize the discovery or inspection of . . . statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). Accordingly, the Second Circuit repeatedly has held that the government cannot be ordered to produce 3500 material before the witness testifies on direct examination. See Coppa, 267 F.3d at 145 ("We have previously held that Jencks Act prohibits a District Court from

16

ordering the pretrial disclosure of witness statements."); In re United States, 834 F.2d 283, 286-87 (2d Cir. 1987) (granting mandamus to vacate order requiring production of witness statements); United States v. Percevault, 490 F.2d 126, 131-32 (2d Cir. 1974) (reversing order suppressing witness statements on grounds that government did not produce witness statements in advance of trial); see also Morante, 947 F. Supp. 2d at 313-14 (recognizing "the law does not require or encourage disclosure of either Giglio or Section 3500 material before trial"); United States v. Sabhnani, No. 07-CR-429 (ADS), 2007 WL 2908105, at *1 (E.D.N.Y. Oct. 5, 2007) (denying defendant's request for early disclosure of 3500 material because "the Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements").

The government similarly has no obligation to disclose its witness list prior to trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see also United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990) ("Fed. R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses in general."); Freeman, 2019 WL 2590747, at *3 ("A defendant is not entitled to the Government's witness list prior to trial.") (internal quotations omitted).  A district court, however, has "discretion to compel pretrial disclosure where a defendant makes a specific showing that disclosure is both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." See Freeman, 2019 WL 2590747, at *3 (internal quotations and alternation omitted); see also Morante, 947 F. Supp. 2d at 314 (finding defendant had not made particularized showing and facts did not suggest defendant would be unfairly prejudiced by waiting until trial to be furnished with witness list); United States v. Pimentel, No. 99-CR-1104 (SJ), 2001 WL 185086, at *2 (E.D.N.Y. Jan. 22, 2001) (denying defendant's request for production of

17

witness list where defendant's showing of need was "nothing more than an assertion that the witness list would facilitate trial preparation"); Russo, 483 F. Supp. 2d at 309 (denying defendants' request for production of witness list where defendants made no particularized showing that the list was material to the defense's preparation and instead made only "an abstract statement of need" given the complexity of the case).

Likewise, the government has no obligation to disclose its exhibit list prior to trial.  See United States v. Galestro, No. 06-CR-285 (ARR), 2008 WL 2783360, at *19 (E.D.N.Y. July 15, 2008) ("the prosecution [does] not have any obligation under Rule 16 of the Federal Rules of Criminal Procedure to identify the specific [exhibits] it intends to use as evidence"); see also United States v. Nachamie, 91 F. Supp. 2d 565, 569-70 (S.D.N.Y. 2000) (holding that Rule 16 does not authorize early designation of trial exhibits).  Some courts in this Circuit, however, have required pretrial disclosure of the government's exhibit list in complex cases involving voluminous discovery.  See Freeman, 2019 WL 2590747, at *4.

The government expects to produce 3500 material, as well as witness and exhibit lists, to defendants in advance of trial.  However, given that trial is not yet scheduled and the government is continuing to prepare its case, the government respectfully requests that the Court defer setting deadlines for disclosure of these materials until closer to trial.[3]

---

[3] As the Court is aware, the government's standard practice is to disclose Giglio material, 3500 material, witness lists, and exhibit lists two weeks prior to trial.  To the extent the Court is inclined to set any disclosure deadlines at this point, the government respectfully submits that the Court should require production on that schedule.  Such a schedule will provide ample time for the defendants to prepare their cases.

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny the defendants' motion, enter the proposed Rule 5(f) order attached to this motion as Exhibit A, and read the statement attached to this motion as Exhibit B at the next court date on which both the government and defense counsel are present.

Dated:   Brooklyn, New York
         December 11, 2020

                                    SETH D. DUCHARME
                                    Acting United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

                            By:     _____/s/_____
                                    Martin E. Coffey
                                    F. Turner Buford
                                    Assistant United States Attorneys
                                         (718) 254-6157/6483
                                    Virginia T. Nguyen
                                         Special Assistant United States Attorney
                                         (718) 254-6280