```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

                - against -                                    MEMORANDUM & ORDER
                                                                  20-CR-272 (PKC)
DONAL O'SULLIVAN, HELEN
O'SULLIVAN, and PADRAIG NAUGHTON,

                        Defendants.
---------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

Defendants Donal O'Sullivan, Helen O'Sullivan, and Padraig Naughton—high-ranking employees at Navillus Tile, Inc. d/b/a Navillus Contracting ("Navillus"), one of the largest construction companies in New York City—are charged with conspiring to participate, and participating, in a multi-year fraudulent scheme to avoid making required payroll contributions to certain union benefits funds. (*See generally* Indictment, Dkt. 1.)  On November 23, 2020, the Government moved to admit certain "other acts" evidence, including evidence relating to Navillus's use of purported alter-ego companies to avoid making union benefits contributions, which was the subject of recent civil litigation in the United States District Court for the Southern District of New York ("SDNY").[1]  (Dkt. 82, at 8–17.)  At oral argument on April 16, 2021, the

---

[1] Defendants Donal O'Sullivan and Helen O'Sullivan, along with others, were named as defendants in a pair of consolidated civil cases brought by the trustees of several union benefits funds alleging that Navillus had set up alter-ego companies to avoid making required contributions to the funds. *Moore v. Navillus Tile, Inc.*, No. 14-CV-8326 (CM) (JLC) (S.D.N.Y. filed Oct. 17, 2014); *Gesualdi v. Navillus Tile, Inc.*, No. 15-CV-8441 (CM) (JLC) (S.D.N.Y. filed Oct. 27, 2015). Following a bench trial that spanned two weeks, the Honorable Colleen McMahon issued a verdict awarding over $70 million in damages. *See* 276 F. Supp. 3d 110, 166–67 (S.D.N.Y. 2017), *vacated*, 2018 WL 7048697, at *1 (S.D.N.Y. Oct. 26, 2018).  While the verdict was on appeal, the parties settled, and Judge McMahon's verdict was ultimately vacated so that the parties could consummate the settlement agreement. *See* 2018 WL 7048697, at *1; *see also* Order Declaring Intention to Vacate Judgment, *Moore*, No. 14-CV-8326 (CM) (JLC) (S.D.N.Y. Aug. 16, 2018), ECF No. 341.

1

Court issued an oral ruling from the bench—later memorialized in a written decision on May 18, 2021—that the Government generally would not be allowed to introduce evidence from the prior civil litigation. *See United States v. O'Sullivan*, 20-CR-272 (PKC), 2021 WL 1979074, at *11–12 (E.D.N.Y. May 18, 2021). The Court found that any probative value this evidence might have "is substantially outweighed by its unfair prejudice and misleading nature, as well as the undue delay and confusion its introduction will almost certainly precipitate." *Id.* at *11.

The Court's ruling expressly did not extend to whether the Government could introduce the *fact* of the filing of the SDNY civil litigation to prove scienter with respect to Defendant Helen O'Sullivan. *Id.* at *9 n.6. The Court reserved decision on the admissibility of this evidence pending additional briefing from the parties. *Id.* On April 30, 2021, the Government submitted a letter brief in support of its position that the fact of the filing of the civil litigation is admissible. (Dkt. 151.) Defendants responded by letter on June 11, 2021. (*See* Dkt. 158 (response from Defendant Helen O'Sullivan), Dkt. 160 (letter from Defendant Naughton joining Helen O'Sullivan's response and making additional arguments).). The Government replied by letter on June 25, 2021. (Dkt. 162.) As discussed below, the Court finds that the initiation of the SDNY civil litigation has little probative value in this case and that this minimal probative value is substantially outweighed by the unfair prejudice, confusion, and delay its introduction will cause. The Government therefore will not be allowed to introduce at trial the fact that civil litigation was initiated against Defendants Helen and Donal O'Sullivan, Navillus, and others in the SDNY in October 2014.[2]

---

[2] The Court has also reserved decision on the admissibility of statements made by Defendants during the civil litigation that are relevant to this case. *O'Sullivan*, 2021 WL 1979074, at *9 n.6. According to the parties, they are attempting to reach agreement regarding these statements and will bring any remaining objections to the Court's attention "sufficiently in advance of trial to permit a pre-trial ruling." (Dkt. 158, at 1.)

**DISCUSSION**

Other-acts evidence is admissible "for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994)). "Under this approach, such evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial." *United States v. Flom*, 256 F. Supp. 3d 253, 266 (E.D.N.Y. 2017) (citing *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013)).

Here, the Government seeks to admit evidence that civil litigation involving union benefits contributions was brought in the SDNY against Defendants Donal O'Sullivan and Helen O'Sullivan, Navillus, and others in October 2014, during the period when the payroll scheme charged in the Indictment in this case was allegedly perpetrated. (*See* Dkt. 151, at 2; *see also* Dkt. 162, at 2.) Shortly after the SDNY civil litigation commenced, an anonymous Gmail account (the "Gmail Account") was created and allegedly used by Helen O'Sullivan to transmit payroll information in connection with the fraud scheme in this case. (*See* Dkt. 151, at 2–3; *see also* Dkt. 162, at 1–2.) No one disputes that the Government may introduce evidence of the Gmail Account at trial. (*See* Dkt. 158, at 4; Dkt. 162, at 2 n.2.) The Government, however, believes that the initiation of the SDNY civil litigation provides important context for the creation of the Gmail Account. According to the Government, the fact that the Gmail Account was created shortly after civil litigation involving union benefits funds was brought against Donal O'Sullivan and Helen O'Sullivan shows that "the creation of the Gmail Account was motivated by the civil litigation," and "such motivation evidences Helen O'Sullivan's knowledge of and intent to evade detection of the charged scheme, and her consciousness of guilt." (Dkt. 162, at 2.)

3

The Court has already generally rejected the Government's argument that evidence relating to the civil litigation should be admitted because it is somehow probative of Defendants' knowledge and intent with respect to the alleged scheme. *See O'Sullivan*, 2021 WL 1979074, at *11–12. That the Gmail Account was created shortly after the commencement of the civil litigation does not make it significantly more probative than the general SDNY civil litigation evidence that the Court has excluded. Besides the timing, there is nothing that connects the Gmail Account and the filing of the civil case. Moreover, as the Government admits, even after the creation of the Gmail Account, there were "at least three instances" when Helen O'Sullivan transmitted payroll information from her Navillus email account, instead of the Gmail Account. (Dkt. 151, at 2 n.3.) This undercuts the Government's theory that the Gmail Account was created in response to the civil litigation to avoid detection of the alleged payroll scheme.[3] In short, the probative value of the filing of the civil litigation as it pertains to Helen O'Sullivan's "consciousness of guilt"—not to mention that of the other defendants—is slight.[4] *Cf. United States v. Ferguson*, No. 06-CR-137 (CFD), 2007 WL 4240782, at *3 (D. Conn. Nov. 30, 2007) (finding

---

[3] The Government argues that Helen O'Sullivan's continued use of her Navillus email account after the Gmail Account was created goes only to the weight the jury should give the civil litigation and Gmail Account evidence. (*See* Dkt. 162, at 3–4.) But to the extent her continued use of the Navillus email account weakens the probative value of the civil litigation evidence, it is relevant to the Court's probative-prejudice analysis for purposes of Rule 404(b).

[4] Furthermore, although it is not the Court's role to tell the Government how to try its case, *see Old Chief v. United States*, 519 U.S. 172, 186–87 (1997) (describing "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice"), here, in assessing the probative value of the civil litigation evidence, the Court has considered the fact that the Government has much more direct, and less unfairly prejudicial, proof of Helen O'Sullivan's consciousness of guilt. Instead of relying on a tenuous inference based solely on timing, the Government will be able to argue Defendants' consciousness of guilt simply based on the fact that Helen O'Sullivan created and used the anonymous Gmail Account, and not her Navillus email account, to conduct the alleged unlawful scheme.

that the allegedly suspicious timing of property transfers by the defendant carried "low probative value" as to the defendant's "consciousness of his guilt").

In any event, any probative value of this evidence is far outweighed by the unfair prejudice, jury confusion, and undue delay that would result from its introduction. *See generally Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-CV-445 (PKC), 2014 WL 12843521, at *2 (E.D.N.Y. Jan. 27, 2014) ("Courts generally exclude evidence of other lawsuits . . . because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice." (citations omitted)); *Figueroa v. Boston Sci. Corp.*, No. 00-CV-7922 (DC), 2003 WL 21488012, at *4 (S.D.N.Y. June 27, 2003) (excluding evidence of the existence of other similar lawsuits because the probative value of such evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time"). First, the only way that evidence about the civil litigation has any probative value is by disclosing to the jury that the litigation involved allegations of similar misconduct as charged in this case—precisely the type of "propensity evidence in sheep's clothing" that the Court must guard against. *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009); *see also United States v. Mostafa*, 16 F. Supp. 3d 236, 253 ("The Government may not use Rule 404(b) to 'parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo.'" (quoting *Huddleston v. United States*, 485 U.S. 681, 689 (1988))). Second, the Government's assurance that evidence of the fact of the filing of the civil litigation would be limited in scope (*see* Dkt. 162, at 1–2), and may be accompanied by a limiting instruction (*see id.* at 4), is unavailing. There is no way to sanitize or limit this evidence so that it does not inform the jury that Helen and Donal O'Sullivan were both accused in a separate lawsuit of committing union benefits fraud, which will

5

undoubtedly cause the jury to speculate about what happened in that case. And once the Government introduces this evidence, Defendants will be entitled, if not compelled, to rebut or neutralize that evidence with other evidence relating to the litigation, such as evidence distinguishing the facts of that case or demonstrating that no finding of liability exists—a recipe for a "trial-within-a-trial" that would lead to juror confusion and undue delay. *See Ferguson*, 2007 WL 4240782, at *3; *see also Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) ("Admitting evidence about previous cases inevitably results in trying those cases before the jury, and the merits of the other cases would become inextricably intertwined with the case at bar." (internal alterations and quotation marks omitted) (quoting *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989))). Indeed, that the SDNY litigation involved an alleged double-breasting scheme,[5] which is not alleged here, both diminishes its probative value and would confuse the jury over the relevance of this other-act evidence and what the charged scheme is *in this case*.

Thus, even accepting the Government's arguments that the Rule 404(b) evidence relating to the civil litigation is "circumscribed" and has some probative value (Dkt. 162, at 1–2), this evidence nevertheless will open the door to all of the problems that led the Court to preclude evidence relating to the civil litigation in the first place, *see O'Sullivan*, 2021 WL 1979074, at *12. Because the risk of unfair prejudice, confusion, and delay overwhelmingly outweighs the limited

---

[5] "A double-breasted operation is a business comprised of both union and non-union companies in which the non-union company bids on contracts that do not require a union contractor and the union company bids on union contracts." *United States v. Thompson*, 207 F. Supp. 3d 106, 110 (D. Mass. 2016) (citing *Mass. Carpenters Cent. Collection Agency v. A.A. Bldg. Erectors, Inc.*, 343 F.3d 18, 22 (1st Cir. 2003)); *see also Time Square Constr., Inc. v. Mason Tenders Dist. Council of Greater N.Y. & Long Island*, No. 07-CV-7250 (SAS), 2008 WL 55116, at *3 (S.D.N.Y. Jan. 2, 2008) ("Subcontractors at times create 'double-breasted' operations, in which a 'unionized employer . . . creates an ostensibly separate firm with a nonunion workforce.'" (citation omitted)).

probative value of evidence pertaining to the filing of the SDNY civil litigation, it should not be put before the jury. *See* Fed. R. Evid. 403.

## CONCLUSION

The Government's motion to admit evidence about the filing of the SDNY civil litigation in October 2014 is denied. The Government will not be allowed to introduce such evidence at trial.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 20, 2021
      Brooklyn, New York