UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

        - against -                            **MEMORANDUM & ORDER**
                                                              20-CR-272 (PKC)

DONAL O'SULLIVAN, HELEN
O'SULLIVAN, and PADRAIG NAUGHTON,

                Defendants.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

On October 22, 2021, after a fourteen-day trial, a jury found Defendants Donal O'Sullivan, Helen O'Sullivan, and Padraig Naughton (collectively, "Defendants") guilty of: (1) mail and wire fraud conspiracy (Count One); (2) three counts of wire fraud (Counts Two, Three, and Four); (3) three counts of mail fraud (Counts Five, Six, and Seven); (4) conspiracy to embezzle from employee benefits funds (Count Eight); (5) embezzlement from employee benefits funds (Count Nine); (6) conspiracy to file false remittance reports (Count Ten); and (7) the submission of false remittance reports (Count Eleven). The jury found that the conspiracies charged in Counts Eight and Ten constituted a single agreement to commit two offenses. (Verdict Form, Dkt. 262.) The Court sentenced Donal O'Sullivan to a six-month term of imprisonment with two years of supervised release, Naughton to a six-month term of imprisonment with two years of supervised release, and Helen O'Sullivan to two years' probation. (*See* 6/30/2023 Minute Entry; 7/13/2023 Minute Entry.)

Before the Court are:

(1) Donal O'Sullivan's and Naughton's motions for bail pending appeal pursuant to 18 U.S.C. § 3143(b)(1) (Def. Donal O'Sullivan's Mot. for Bail Pending Appeal, Dkt. 409 (hereinafter, "Dkt. 409"); Def. Naughton's Mot. for Bail Pending Appeal, Dkt. 429 (hereinafter, "Dkt. 429"));

(2) Helen O'Sullivan's motion for a stay of her sentence—specifically her term of probation—pursuant to Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 38(d) (Def. Helen O'Sullivan's Mot. for Stay of Execution of Sentence, Dkt. 414 (hereinafter, "Dkt. 414")); and

(3) Defendants' motion for a stay of the Court's Restitution Order pursuant to Fed. R. Crim. P. 38(e)(1) (Def. Donal O'Sullivan's Mot. for Stay of Restitution, Dkt. 432 (hereinafter, "Dkt. 432"), Dkt. 414, Dkt. 429).

For the reasons that follow, Donal O'Sullivan and Naughton's motions for bail pending appeal are denied, Helen O'Sullivan's motion for a stay of her sentence is denied, and Defendants' motion for a stay of restitution is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case and repeats only the information necessary to resolve the instant motions.[1] Defendants' convictions after trial stemmed from their participation in a multi-year fraud scheme to evade making required payroll contributions to certain benefits funds for employees of Navillus Tile, Inc. d/b/a Navillus Contracting ("Navillus")—one of the largest construction companies in New York City—for work that was covered by collective bargaining agreements ("CBAs"). (Ind., Dkt. 1, ¶¶ 1–2, 6–7.) At all times relevant to this matter, Defendants were high-ranking employees at Navillus. (Dkt. 302, at 1.) At trial, the Government established that, between 2011 to 2017, Defendants fraudulently

---

[1] Fuller discussion of the facts in this case can be found in the Court's previous decisions, including the Court's Memorandum & Order denying Defendants' post-trial motions for acquittal or, alternatively, a new trial. *See United States v. O'Sullivan*, 20-CR-272 (PKC), April 6, 2022 Memorandum & Order, Dkt. 302 (hereinafter, "Dkt. 302"), at 2–20; *see also United States v. O'Sullivan*, No. 20-CR-272 (PKC), 2021 WL 1979074, at *1 (E.D.N.Y. May 18, 2021); *United States v. O'Sullivan*, No. 20-CR-272 (PKC), 2021 WL 3080330, at *1 (E.D.N.Y. July 20, 2021); *United States v. O'Sullivan*, No. 20-CR-272 (PKC), 2023 WL 4209611, at *1 (E.D.N.Y. June 26, 2023).

funneled payroll funds for 97 of Navillus's employees through a consulting firm, D.E.M. Consulting LLC d/b/a/ as Allied ("Allied"), which was not a party to the CBAs, as part of a scheme to avoid paying benefits contributions and submitting remittance reports to the benefits funds with respect to those employees' "covered work," i.e., work for which benefits were owed under the CBAs.  (*See* Dkt. 302, at 1–2, 37, 42, 45–46.)

## DISCUSSION

I.  **Donal O'Sullivan's and Naughton's Motions for Bail Pending Appeal**

    A.  **Legal Standard**

In order to grant bail pending appeal under Section 3143, the Court must find that: (1) the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released," by clear and convincing evidence; and (2) the appeal is not for the purpose of delay and "raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1).  A "substantial question" is a "close question or one that very well could be decided the other way."  *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (internal quotations omitted).  There is a "presumption in favor of detention," *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004), and the defendant bears the burden to "rebut this presumption with clear and convincing evidence."  *Id.*; *see also United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) ("[O]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it [absent] exceptional circumstances.").

**B.     Application**

The only disputed issue with respect to Donal O'Sullivan's and Naughton's motions for bail pending appeal[2] is whether they "raise[] a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1). These Defendants present several issues that they maintain meet this standard. However, the Court finds that none of these issues are substantial, and each one "has previously [been] denied based on well-settled precedent." *United States v. Aiyer*, 500 F. Supp. 3d 21, 23 (S.D.N.Y. 2020) (rejecting defendant's motion for bail pending appeal).

Donal O'Sullivan and Naughton both argue that their appeals raise two substantial questions that justify bail pending appeal: (1) whether there was sufficient evidence that he "knew and intended that the Allied workers were engaged in any covered work"; and (2) whether the Court erred by admitting evidence in summary form of Navillus's relationship to the "alter-ego companies." (Dkt. 409, at 2; *see also* Gov't Opp'n, Dkt. 433 (hereinafter, "Dkt. 433"), at 2.)[3] Naughton also argues that his appeal raises the substantial question of "whether the onerous Covid restrictions so permeated the trial that Mr. Naughton was denied a fair trial." (Dkt. 429, at 2.)

---

[2] The Government does not contend, and the Court does not find, that Defendants present a risk of flight or danger to the community, or that the purpose of their appeal is delay.

[3] Naughton frames these issues as: (1) whether the evidence was sufficient to show that he "knew and intended that the Allied workers were engaged in any covered work"; and (2) whether the Court erred by admitting "irrelevant and misleading" evidence regarding Navillus affiliate companies. (Dkt. 429, at 2.)

1.  Sufficiency of the Evidence

Having carefully assessed the sufficiency of the evidence as to the knowledge and intent of Donal O'Sullivan and Naughton in its April 6, 2022 Memorandum & Order denying their post-trial motions for acquittal or a new trial, the Court finds that this issue does not present a substantial question on appeal. In deciding Defendants' post-trial motions, the Court found that the evidence was sufficient to support "the inference that each Defendant had the necessary criminal intent to be convicted of each of the 11 counts charged" and that "the evidence establishing guilt [was] far from meager or non-existent." (Dkt. 302, at 47.)[4]

Indeed, the Court found ample evidence supporting the conclusion that Donal O'Sullivan "directed and was involved in setting up Navillus's relationship with Allied, for the specific purpose of carrying out the fraudulent scheme." (*Id.* at 32.) For example, the Government's cooperating witness, Kieran Lambe, testified that Donal O'Sullivan was a "hands-on" boss and told him that there may be something the two of them could "work out" to have Lambe continue to work for Navillus—through Allied—for immigration and financial reasons. (*Id.* at 31 (citing Trial Tr. 1335:4–12), 32 (citing Trial Tr. 1341:3–22; 1346:22–1347:25).) Donal O'Sullivan also referred to the Allied scheme as "the weekly arrangement" in emails to Lambe. (*Id.* at 32 (citing Trial Tr. 1436:10–21).) Additionally, a Navillus employee, Luis Gonzalez, testified that he

---

[4] Donal O'Sullivan argues that "Section 3143(b) does not 'condition bail upon a district court's finding that its own judgment is likely to be reversed on appeal.'" (Dkt. 435, at 1 (quoting *Randell*, 761 F.2d at 124).) While this is true, "it is not enough for the defendant simply to show that he has raised a non-frivolous issue on appeal." *United States v. Nicolo*, 706 F. Supp. 2d 330, 336 (W.D.N.Y. 2010). And while *Randell* presents what some courts have determined to be a "very undemanding standard," the Court still finds that the issues raised in these motions are "extremely unlikely to be resolved" in Defendants' favor given the heavy burdens they bear and the deferential standard of review that will be employed by the Court of Appeals. *United States v. Ash*, No. 19-CR-780 (LAK), 2022 WL 15157528, at *2 (S.D.N.Y. June 30, 2022).

notified Donal O'Sullivan that he was being paid via checks written out to Donal O'Sullivan's brother-in-law John Michael Sugrue through Allied despite the fact that he (Gonzalez) worked for Navillus.  (*Id.* at 31, 33–34; *see also* Trial Tr. 2293:10–2294:15.)

The Court also determined that there was sufficient evidence to establish that Naughton knew and intended that Allied was being used as a means to avoid contributions to benefits funds.  Among other things, the evidence established that Naughton directed Lambe to change the name of D.E.M. Consulting to Allied, directed Lambe to leave the descriptions of services that Allied was purportedly providing to Navillus as blank, and failed to disclose to Navillus's auditors that Navillus was using Allied to process some of its employees' payroll.  (Dkt. 302, at 38–39.)  In sum, because Naughton was directly and closely involved with Allied the entire time the scheme operated, it is not a "close question" that Naughton knew that the employees being paid through Allied were doing covered work for Navillus and that Naughton sought to conceal this fact.

Donal O'Sullivan argues that "although [the] Court ruled against him" in response to his post-trial motion on the issues he raises as substantial questions for appeal, his arguments are "'fairly debatable,' and . . . go to the heart of his conviction."[5]  (Def. Donal O'Sullivan Reply, Dkt. 435 (hereinafter, "Dkt. 435"), at 1.)  The Court disagrees that these questions are fairly debatable, and instead finds that both Donal O'Sullivan and Naughton's challenges on the issue of the sufficiency of the evidence as to their intent are unlikely to result in a reversal or a new trial given the ample evidence introduced against Defendants at trial.  *See, e.g.*, *United States v. Munshani*, No. 22-CR-215 (JSR), 2023 WL 5390201, at *2 (S.D.N.Y. Aug. 21, 2023) (denying bail pending appeal where defendant raised sufficiency of the evidence as substantial question for appeal).  This

---

[5] Naughton joins in Donal O'Sullivan's post-sentencing submission arguments.  (*See* Dkt. 429, at 2.)

6

is because a criminal defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Wilson*, 503 F.3d 195, 197 (2d Cir. 2007). The Second Circuit will "sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Raniere*, 55 F.4th 354, 364 (2d Cir. 2022). The defendant will be acquitted only "if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.*

A rational jury could—and did—draw inferences from the evidence in the record to conclude that all three Defendants knowingly and intentionally entered into conspiracies to commit mail and wire fraud, to embezzle from employee benefit funds, and to file false remittance reports, and that Defendants committed substantive crimes as part of those conspiracies. Therefore, Donal O'Sullivan and Naughton are unlikely to meet the heavy burden that is required for a reversal or new trial on appeal on this issue.

    2.  <u>Evidentiary Rulings</u>

The Court also does not find that Donal O'Sullivan and Naughton's argument that the allowance of evidence of Navillus's alter-ego companies raises a substantial question on appeal.[6] Specifically, Donal O'Sullivan and Naughton argue that, because "the Government did not lay a foundation to show that the companies actually were alter egos, much less that Navillus owed any union benefit payment for work that was done on their behalf," it was error to allow the

---

[6] Naughton's post-trial motion argued that the introduction of alter-ego evidence warranted a new trial under Fed. R. Crim. P. 33. (Def. Naughton Post-Trial Mot., Dkt. 272-1, at 23–25.) Donal O'Sullivan joined in Naughton's Rule 33 arguments in his post-trial submission. (Def. Donal O'Sullivan Post-Trial Mot., Dkt. 270-1, at 20.)

7

Government to introduce such evidence. (Tr. of June 30, 2023 Sentencing Hr'g, Dkt. 417 (hereinafter, "Tr."), 96:20–23.) Defendants argue that the Government "compounded the error by using this evidence in closing to argue that Allied was just one part of a larger scheme and, in fact, there was virtually no evidence that this was the case." (Tr. 97: 2–5.)

The Court initially notes that trial courts have substantial discretion with respect to evidentiary rulings, which generally are reviewed for abuse of discretion. *See United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (citing *United States v. Anglin*, 169 F.3d 154, 162 (2d Cir. 1999)). The Court of Appeals "will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Kosinski*, 976 F.3d 135, 156 (2d Cir. 2020) (internal quotation marks and citations omitted).

The Court, in ruling on the parties' pre-trial motions, permitted Defendants to introduce evidence of Navillus's contributions to union benefits funds during the relevant period as evidence that Defendants lacked the requisite fraudulent intent or that Navillus's failure to pay benefits contributions through Allied was inadvertent. (Nov. 5, 2021 Mem. & Order, Dkt. 265 (hereinafter, "Dkt. 265"), at 29; *see also O'Sullivan*, 2021 WL 1979074, at *11–12; *O'Sullivan*, 2021 WL 3080330, at *2–3.) In allowing this evidence to come in, however, the Court recognized that the door was opened for the Government to admit or reference "at least some of the SDNY civil litigation evidence regarding alter-ego companies" that the Court had previously excluded. (Dkt. 265, at 31.) In reaching this conclusion, the Court noted that "[b]y seeking to argue a lack of criminal intent based on the magnitude of the contributions Navillus made compared to the magnitude of the contributions it avoided through the alleged payroll scheme, Defendants made the evidence tending to show that Navillus avoided making benefits contributions through other schemes or means plainly relevant and . . . probative of knowledge and fraudulent intent as to the

8

alleged scheme." (*Id.*) To mitigate the risk of prejudice to Defendants and confusion of the jury, the Court ruled that the Government could admit this evidence in summary form only. (*Id.* at 32.) Given the high bar for reversing a district court's evidentiary ruling, in addition to the measures the Court took to mitigate any potential prejudice to Defendants, this issue is not a "substantial question" for appeal.[7]

Accordingly, the Court's admission—in limited form and for rebuttal purposes—of evidence of Navillus's alter-ego companies is not "so integral to the merit" of Defendants' convictions and therefore does not warrant bail pending appeal. *Nicolo*, 706 F. Supp. 2d at 338 (quoting *Randell*, 761 F.2d at 125); *see also United States v. Singh*, No. 21-CR-397 (CBA), 2022 WL 16855789, at *2 (E.D.N.Y. Nov. 10, 2022) (denying a defendant's motion for bail pending appeal where the Court allowed the introduction of certain evidence at trial, where government "supported its case against [defendant] with abundant [] evidence"); *United States v. Block*, No. 16-CR-595 (JPO), 2017 WL 6550688, at *2 (S.D.N.Y. Dec. 22, 2017) (denying defendant's

---

[7] To the extent Defendants are arguing that the Government committed misconduct during summation and are appealing on that basis, Defendants bear a heavy burden. *See United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (finding that the district court's rulings regarding the government's summation did not deprive the defendant of a fair trial). "Inappropriate prosecutorial comments, standing alone, [do] not justify . . . revers[ing] a criminal conviction obtained in an otherwise fair proceeding." *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004). Furthermore, the Court has already determined that summation arguments relating to the alter-ego companies were not improper in the context of all of the evidence that was admitted in the trial and the arguments made by Defendants at trial. (Dkt. 302, at 48–51.) Indeed, the defense's evidence of the disproportionate magnitude of union benefits paid by Navillus featured prominently in Donal O'Sullivan's opening statement to the jury. (*See* Trial Tr. 830:19–831:11.) Therefore, the Court finds this aspect of the case does not present a "substantial question" for appeal. *See Munshani*, 2023 WL 5390201, at *5 (denying bail pending appeal where one of the substantial questions proffered by the defendant was that the government had raised a "new and inaccurate" argument on rebuttal summation).

motion for bail pending appeal after concluding that "any error is likely to be harmless in light of the strong evidence of [the defendant's] guilt").

### 3. COVID-19 and the Trial

Naughton argues that the "onerous Covid restrictions so permeated the trial" that he was deprived of a fair trial, and that this is a substantial question for appeal. (Dkt. 429, at 2.) The Court disagrees. Before and during this trial, which occurred during the COVID-19 pandemic, the Court carefully considered relevant concerns raised by the parties and those that the Court foresaw as potential issues to ensure a fair trial. The Court made certain allowances to ameliorate any concerns regarding Defendants' constitutional rights to confrontation and a fair trial. For example, the Court permitted Defendants to wear clear face shields, which allowed the jury to see their faces during the trial. (*See* 9/17/2021 Minute Entry.) Counsel was also permitted to address the jury and question witnesses unmasked (but behind a clear, plexiglass screen or booth using a microphone). (*Id.*) Witnesses were also unmasked and protected by a plexiglass screen and clear face shields. (*Id.*) In sum, the Court followed necessary protocols to minimize the risk of COVID-19 infection to all individuals participating in the trial while making certain allowances to ensure that Defendants received a fair trial. Therefore, whether Defendants received a fair trial is not a "fairly debatable" question. *See United States v. Tagliaferro*, 531 F. Supp. 3d 844, 849–51 (S.D.N.Y. 2021) (holding that the COVID-19 mask mandate did not violate criminal defendant's Sixth Amendment rights to physical confrontation and right to cross-examine witnesses); *United States v. Lloyd*, No. 17-CR-119, 2021 WL 3908434, at *7 (W.D.N.Y. Sept. 1, 2021) (affirming defendants' convictions following September 2020 jury trial where defendants raised issues with the COVID-19 protocols).

4. <u>Adjournment of Surrender Date</u>

In the alternative, Donal O'Sullivan and Naughton request that, should the Court deny their motions for bail pending appeal, the Court adjourn their surrender date—currently set for November 13, 2023—to May 13, 2024, in order to provide the Second Circuit Court of Appeals sufficient time to consider their arguments. (Dkt. 409, at 2; Dkt. 429, at 2–3.) Donal O'Sullivan notes that the Government provides "no substantive reason" why this "moderate extension" should not be granted. (Dkt. 435, at 2.) But the burden is not on the Government to justify why no bail pending appeal should be granted—which is in effect, what these Defendants seek through their request not to be required to surrender until their appeals are resolved—that burden is on Defendants.

Donal O'Sullivan and Naughton reason that they may have already served their six-month terms of imprisonment by the time the Court of Appeals addresses their appeal, but offer no other reason to adjourn their November 13, 2023 surrender date. This reason is simply insufficient, *see Aiyer*, 500 F. Supp. 3d at 26 (rejecting similar argument); in fact, the Court finds it irrelevant.[8] The relevant analysis for this relief—which is no different than bail pending appeal—is whether these Defendants have raised substantial issues in their appeals, and, as discussed, they have not. The Court therefore declines to adjourn Donal O'Sullivan and Naughton's surrender date.

---

[8] Applying the defense's reasoning, defendants who receive longer sentences are less entitled to delay their surrender date. But the harm suffered by a defendant serving some or all of a sentence that is later vacated does not vary depending on the length of the sentence; it is the *risk* of serving a sentence that is later overturned that determines the potential harm that a defendant will suffer if his surrender date is not delayed while his appeal is pending. A defendant should not be able to capitalize on his good fortune in receiving a low sentence—in this case, dramatically below the applicable Sentencing Guidelines range of 70-87 months—to delay his surrender date where he faces little risk of his conviction and sentence being overturned. (Gov't Sent'g Mem. for Donal O'Sullivan, Dkt. 390, at 1; Gov't Sent'g Mem. for Naughton, Dkt. 380, at 2.)

## II. Helen O'Sullivan's Motion for a Stay of Her Sentence of Probation

Seeking to avoid "the potential immigration consequences of an unstayed judgment," Helen O'Sullivan moves for a stay of her sentence of two years' probation under Fed. R. Crim. P. 38(d).[9] (Dkt. 414, at 1.) In her motion, Helen O'Sullivan incorporates the arguments made by Donal O'Sullivan in his bail pending appeal submission and the statements made by her lawyer and counsel for Donal O'Sullivan at the June 30, 2023 Sentencing Hearing. (*Id.*) For similar reasons to those discussed above, Helen O'Sullivan's motion for a stay of her sentence of probation is also denied.

"A stay pending appeal 'is not a matter of right,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *United States v. Chan*, No. 17-CR-234 (JAM), 2018 WL 3031853, at *5 (D. Conn. June 19, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). "The traditional factors that govern whether to grant a stay of court order pending appeal are (1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (internal quotation marks and citation omitted). The first two factors are the most critical. *See United States v. Bical*, 409 F. Supp. 3d 51, 52 (E.D.N.Y. 2019) (denying stay of sentence pending appeal).

As to the first prong, the Court finds that Helen O'Sullivan has not presented "a strong showing" that her appeal "is likely to succeed on the merits." *Chan*, 2018 WL 3031853, at *5. Like the evidence implicating her co-defendants and as the Court previously found, the evidence

---

[9] FRCP 38(d) provides: "[i]f the defendant appeals, the court may stay a sentence of probation. The court must set the terms of any stay." Fed. R. Crim. P. 38(d).

of Helen O'Sullivan's knowledge and intent to use Allied as a means to avoid making contributions for covered work into benefits funds is strong. The evidence plainly showed that Helen O'Sullivan was directly involved in the day-to-day operation in managing the Allied scheme. (Dkt. 302, at 42.) For example, Helen O'Sullivan was in constant communication with Lambe and his employee, Georgeanne Kelly, regarding the Navillus employees being paid by Allied, Helen O'Sullivan directed Navillus drivers to pick up and deliver paychecks issued to Navillus employees through Allied, and failed to disclose Navillus's monthly remittance reports to the union benefits funds that some of the company's employees were being paid through Allied (despite certifying the accuracy and completeness of those reports). (*See* Trial Tr. 1382:5–16; 1403:4–1410:4; 1447:23–1449:6; 1449:22–1450:15; 1520:14–1525:17; 2040:7–25; 2041:1–2042:3; 2043:3–19; 2049:12–2052:4; 2053:9–2054:12, 2055:11–2057:8, 2057:11–25, 2058:1–2059:14, 2060:21–2061:16; 2519:17–21; GX 4152 (Bricklayers remittance report); GX 4326 (Cement & Concrete Workers remittance report); GX 4400 (Cement Masons remittance report); GX 4623 (Mason Tenders remittance report); GX 4717 (Pointers, Cleaners & Caulkers remittance report); GX 4816 (Teamsters remittance report).) As discussed, the Government's evidence of Navillus's use of alter-ego companies does not contribute to a showing—let alone a strong one—that Helen O'Sullivan will succeed on appeal.

As to the second prong, Helen O'Sullivan seems to indicate that absent a stay of her sentence, she will be irreparably injured, though this is not made explicit in her four-sentence motion. (*See* Dkt. 414.) The Court concludes that Helen O'Sullivan has not made the necessary showing of irreparable harm, in that she has failed to demonstrate that she will suffer any immigration consequences from her conviction—i.e., deportation—before the completion of her two-year term of probation. *See United States v. Bhindar*, No. 07-CR-711-04 (LAP), 2010 WL

13

2633858, at *2 (S.D.N.Y. June 30, 2010) (denying bail pending appeal where defendant complained of ineffective assistance of counsel despite being well informed that he would be deported "at the conclusion of [his] sentence"). Two years certainly provides ample time for Helen O'Sullivan's appeal to be resolved. Thus, Helen O'Sullivan has failed to demonstrate any harm, no less irreparable injury, that will result if her probationary sentence is not stayed.[10]

Accordingly, because Helen O'Sullivan has failed to establish at least two of the four factors in support of her motion to stay her sentence of probation,[11] that motion is denied.

\* \* \*

For these reasons, Donal O'Sullivan's and Naughton's motions for bail pending appeal are denied and they are directed to voluntarily "surrender for service of sentence at the institution designated by the Bureau of Prisons before 2 p.m. on 11/13/2023," as previously directed by the Court. (9/6/2023 Docket Order, Dkt. 421.) Helen O'Sullivan's motion for a stay of her sentence of probation is also denied, and her fine payment of $5,000 is due immediately. (J. as to Helen O'Sullivan, Dkt. 423, at ECF 6.)[12]

---

[10] In her reply submission, Helen O'Sullivan states that "the issue" is "not payment of the modest fine the Court imposed." (Def. Helen O'Sullivan Reply, Dkt. 436 (hereinafter, "Dkt. 436"), at 1.) Therefore, to the extent Helen O'Sullivan is moving to stay this aspect of her sentence, the Court denies that motion and directs her to immediately pay the $5,000 fine imposed as part of her judgment.

[11] Although unnecessary to the resolution of the stay motion, the Court also finds that the fourth factor—where the public interest lies—also does not favor staying Helen O'Sullivan's probationary sentence.

[12] As indicated in Helen O'Sullivan's Judgment, she is also responsible for a total of $1,100 in Special Assessments, also due immediately. (*Id.*)

14

### III. Stay of Restitution

#### A. Legal Standard

Fed. R. Crim. P. 38 governs the stay of various aspects of a criminal sentence, including criminal monetary penalties, such as fines and restitution imposed against a defendant. Fed. R. Crim. P. 38(e) states that a district court "may stay—on any terms considered appropriate—any sentence providing for restitution under 18 U.S.C. § 3556 or notice under 18 U.S.C. § 3555. Fed. R. Crim. P. 38(e)(1). "Such a stay may be granted 'based upon the court's discretion' after considering whether a defendant would, 'suffer irreparable harm should the stay be denied.'" *United States v. Shkreli*, No. 15-CR-637 (KAM), 2018 WL 3425286, at *2 (E.D.N.Y. July 10, 2018) (quoting *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62, 70 (W.D.N.Y. 1988)); *see also United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016) (granting motion to stay execution of fine where the defendant showed "possibly meritorious legal basis for his appeal" and "irreparable harm should the stay be denied because to pay the fine he would be forced to sell his two residences and to incur substantial tax liability associated with liquidating his retirement account" (citations omitted)).

#### B. Application

All three Defendants also move for a stay of the Court's Restitution Order pending appeal. (*See* Dkt. 414, at 1; Dkt. 429, at 2–3; Dkt. 432, at 1.) On September 6, 2023, the Court awarded a total of $1,276,076.35 in restitution to certain victim benefits funds. (*See* Restitution Order, Dkt. 420 (hereinafter, "Dkt. 420"), at 8–9.) The Court concluded that because Donal O'Sullivan was the leader of the fraud scheme and the scheme's direct beneficiary, he would be liable for 100% of the total restitution amount, and that Defendants Helen O'Sullivan and Naughton would be

15

jointly and severally liable for 30% of the restitution amount, but only in the event of a demonstrated inability to pay the full amount by Donal O'Sullivan. (*Id.* at 1–2.)

Donal O'Sullivan states that he would be "irreparably harmed" by his obligation to pay the restitution sum should he prevail on appeal because he would be unable to recover the sum of money he would have paid to the victims by then. (Dkt. 435, at 2.)[13] Under the schedule set forth in the Restitution Order, Defendant Donal O'Sullivan is required to pay 1/4 of the restitution sum—approximately $319,000 dollars—each quarter over the course of one year. (Dkt. 420, at 9.) Donal O'Sullivan argues that the Government has not offered "any factual basis to conclude that any of the potential recipients would be injured—much less 'substantially' so—by a stay." (Dkt. 435, at 2.) In lieu of beginning to fulfill his restitution obligation to the victims of his fraud scheme, Donal O'Sullivan suggests alternatives to the Court—either an order to post a bond to ensure compliance with his restitution obligations or deposits of his court-ordered quarterly payments into the district court's registry pursuant to subsections C and D of Fed. R. Crim. P. 38(e)(2). (*Id.* at 2–3.) The Court denies Donal O'Sullivan's motion to stay execution of the Restitution Order or to allow for an alternative to paying restitution as ordered by the Court.

First, Donal O'Sullivan misplaces the burden of showing prejudice onto the Government. As noted above, it is the *defendant* who must show that he would "suffer irreparable harm should the stay be denied," *Shkreli*, 2018 WL 3425286, at *2 (internal quotation marks omitted), and not the *Government* on behalf of the victim. Second, to the extent Donal O'Sullivan claims that he will suffer "irreparable harm" because he will not be able to recover restitution paid to the victim benefits funds if his convictions are overturned, he offers no evidence to support that conclusion.

---

[13] Defendants Helen O'Sullivan and Naughton joined in Defendant Donal O'Sullivan's reply submission. (*See* Dkts. 436, 437.)

Indeed, as the Government notes, the benefits funds "routinely take in and disburse substantial sums." (Dkt. 433, at 5.) Third and importantly, as the Government notes, it is the victim benefits funds who will be prejudiced by the continued delay in receiving the contributions they were due back in 2011–2017, which will result in the continuing lost value of those funds over time. (*Id.*)

Accordingly, the Court, finding that Donal O'Sullivan will not be irreparably harmed and further finding that irreparable harm will result for the victim benefits funds, denies his request to stay the Restitution Order. Donal O'Sullivan shall make his first quarterly payment to the victims by January 1, 2024.

## CONCLUSION

For the reasons stated above, Defendants' motions are denied in their entirety. Donal O'Sullivan and Naughton are directed to surrender on November 13, 2023 at 2 p.m. at the institution designated by the Bureau of Prisons. Donal O'Sullivan will make his first quarterly payment of restitution on January 1, 2024 and every quarter thereafter as directed in the Restitution Order. Helen O'Sullivan's term of probation shall commence immediately.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 27, 2023
      Brooklyn, New York